# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

PHILLIPS 66 CO.,

        Plaintiff,

  v.

CALIFORNIA PRIDE, INC., et al.,

        Defendants.

_____/

Case No.  1:16-cv-01102-LJO-SKO

**FINDINGS AND RECOMMENDATIONS THAT THE COURT GRANT IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT CALIFORNIA PRIDE, INC.**

**OBJECTION PERIOD: 21 DAYS**

**(Doc. 15)**

      Before the Court is Plaintiff's Motion for Default Judgment.  (Doc. 15.)  For the reasons provided herein, the undersigned recommends that the presiding district court judge GRANT IN PART Plaintiff's Motion for Default Judgment, (*id.*), to the extent that Plaintiff request that the Court enter default judgment against Defendant California Pride, Inc.

## I.  BACKGROUND

      This action involves a contractual dispute between the provider of certain goods and services, Plaintiff, and the owners and/or operators of a gas station, Defendants.  Plaintiff "is a Delaware corporation with its principal place of business in Houston, . . . Texas."  (Doc. 1 ¶ 2.)  "Defendant California Pride, Inc. . . . is an inactive California corporation . . . ."  (*Id.* ¶ 3.)  Defendants Steven Coldren and Rebecca Coldren (together, the "Individual Defendants") are individuals who reside in Kingsburg, California.  (*Id.* ¶¶ 4–5.)

**A.      Background Facts and the Parties' Agreements**

Defendant California Pride, Inc. "operated a gas station in Fresno, California and purchased motor fuels and related products from ConocoPhillips Company" ("ConocoPhillips"). (*Id.* ¶ 8.) On September 22, 2005, the Individual Defendants "executed a personal guaranty under which each absolutely and unconditionally guaranteed the prompt payment of any and all present and future indebtedness of [Defendant California Pride, Inc.] to ConocoPhillips" (the "Guaranty"). (*Id.* ¶ 15; *see id.* at 80–82 (the Guaranty).)

"On December 4, 2006, Defendant California Pride, Inc. . . . entered into a 15-year [b]randed [r]eseller [a]greement with ConocoPhillips Company" (the "Reseller Agreement"). (Doc. 15, Ex. 3 ¶ 2; *see* Doc. 1 at 12–59 (the Reseller Agreement).)   Under this Reseller Agreement, Defendant California Pride, Inc. "agreed to promote and sell . . . branded motor fuel at its station, including purchasing minimum amounts of . . . branded motor fuel for resale, participating in ConocoPhillips's marketing programs, and complying with ConocoPhillips's guidelines on operation and image standards." (Doc. 1 ¶ 9.)

"Pursuant to [the Reseller Agreement], ConocoPhillips advanced $250,000 to [Defendant California Pride, Inc.] for improvements to the [gas] station." (*Id.* ¶ 10.) "On or about December 11, 2006, [Defendant California Pride, Inc.] executed a [p]romissory [n]ote in favor of ConocoPhillips," (Doc. 13, Ex. 3 ¶ 2), "to secure the loan" of $250,000, (Doc. 1 ¶ 10).

Subsequently, Defendant California Pride, Inc. "requested" that ConocoPhillips "reduce" its quotas under the Reseller Agreement for "annual minimum amount of fuel purchase." (*Id.* ¶ 11.)   ConocoPhillips and Defendant California Pride, Inc. then executed an addendum to the Reseller Agreement "on or about January 22, 2010," as well as an amended promissory note. (*Id.* ¶¶ 11–12.)

In May 2012, "ConocoPhillips spun off its downstream assets into newly formed [Plaintiff]." (*Id.* ¶ 16.)   "On or about May 1, 2012, ConocoPhillips assigned all rights" to the Reseller Agreement, the related promissory notes, and the Guaranty to Plaintiff, "including all rights to collect the indebtedness due to ConocoPhillips under" these agreements. (Doc. 15, Ex. 3 ¶ 4.)

In roughly 2013, Defendant California Pride, Inc. "again requested" that Plaintiff "reduce its annual minimum fuel purchase requirement." (Doc. 1 ¶ 13.) Defendant California Pride, Inc. and Plaintiff entered into another addendum to the Reseller Agreement with an effective date of July 1, 2013. (*Id.* ¶ 13.) Additionally, Defendant California Pride, Inc. executed another amended promissory note with an effective date of July 1, 2013 (the "Amended Note"). (*Id.* ¶ 14; *see id.* at 74–77.) At the time of the execution of the Amended Note, the balance of Defendant California Pride, Inc.'s debt to Plaintiff was $195,501. (*Id.* at 74.)

Under the Amended Note, Defendant California Pride, Inc. agreed to "make quarterly principal and interest payments" to Plaintiff "in the amount of $6,240.00." (*Id.* at 75.) The Amended Note provides an interest rate on the principal of the loan—which is defined in the Amended Note as the "Note Rate"—of "10.00% per annum." (*Id.*) The Amended Note also states that, "in the event of a default under the [Amended] Note, . . . the principal shall bear interest at a default rate of two percent . . . higher than the Note Rate"—which the Amended Note defines as the "Default Rate." (*Id.*) The Amended Note further states that Plaintiff "may declare the unpaid principal balance of the [Amended] Note immediately due and payable" in the event of a default on the Amended Note by Defendant California Pride, Inc. (*Id.*)

On the issue of attorneys' fees, the Amended Note states the following: "[Defendant California Pride, Inc.] agrees to reimburse [Plaintiff] on demand for all legal fees and other costs and expenses incurred in collection or enforcing this [Amended] Note and protecting or realizing on any collateral, together with interest at the Default Rate." (*Id.* at 76) As to choice of law, the Amended Note states that "the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the internal laws of the State of California without regard to principles of conflicts of law." (*Id.*)

In 2015, Defendant California Pride, Inc. "fail[ed] to purchase the minimum amounts of . . . branded motor fuel and . . . fail[ed] to timely pay for fuel purchase," as required by the Reseller Agreement and its addenda. (*Id.* ¶ 17.) Defendant California Pride, Inc. also "fail[ed] to timely make the quarterly payments due" under the Amended Note. (*Id.* ¶ 26.)

The parties subsequently entered into a Mutual Termination and General Release Agreement with an effective date of September 1, 2015 (the "Termination Agreement"). (*Id.* at 84–86.) In this Termination Agreement, Defendant California Pride, Inc. and Plaintiff state that they "agree to mutually cancel and terminate" the Reseller Agreement, as well as "any and all amendments, exhibits, attachments and assignments thereof." (*Id.* at 84.) The Termination Agreement further states that, pursuant to the January 22, 2010 addendum to the Reseller Agreement, "an early termination of the [Reseller Agreement] should result in payment of the . . . [l]oan balance owed by [Defendant California Pride, Inc.] to [Plaintiff] in the amount of . . . $187,548.60." (*Id.* at 85.) "[A]s consideration for" the Termination Agreement, Plaintiff agreed to "$100,000 in consideration of a full release of the . . . [l]oan [b]alance." (*Id.*) The Termination Agreement further states that Plaintiff "accepts such payoff provided that no later than November 30, 2015, [Defendant California Pride, Inc.] has sold the [gas station] to a company or individual that is approved by [Plaintiff] and agrees to rebrand the [gas station] with [Plaintiff] and sell [Plaintiff's] motor fuels." (*Id.*; *cf.* Doc. 15, Ex. 3 ¶ 5 (providing the declaration of Chad Cunningham, Plaintiff's "Director, US Marketing, Lubes & Specialty Products," in which Mr. Cunningham states that "the amount due under the Amended Note was due and payable" on November 17, 2015).)

Defendant California Pride, Inc. "failed to pay [Plaintiff] $100,000 and failed to timely sell its gas station." (*Id.* ¶ 18.) As such, Plaintiff asserts that Defendant California Pride, Inc. failed to satisfy the terms of the release provided in the Termination Agreement. (*Id.*) As of November 7, 2015, the "principal and regular accrued interest under the Amended Note" was "$187,469.39." (*Id.* ¶ 22.)

**B.    Procedural Posture**

Plaintiff filed its Complaint for Breach of Contract (the "Complaint") in this Court on July 29, 2016. (Doc. 1.) The Complaint includes a single claim for breach of contract against all Defendants. (*See id.* ¶¶ 24–34.) In particular, the Complaint alleges that Defendant California Pride, Inc. breached the Amended Note, while the Individual Defendants breached the Guaranty. (*See id.*) The Complaint includes the following requests for relief: (1) "actual damages of

$187,469.39," (2) "costs of court," (3) "reasonable and necessary attorneys' fees," (4) prejudgment interest allowed by law," and (5) "post judgment interest at the highest legal rate from the date of judgment until the judgment is satisfied." (*Id.* at 6–7.)

Plaintiff effectuated service of the Complaint on all Defendants on October 8, 2016. (*See* Docs. 6–8.) To date, no Defendant has filed a response to the Complaint.

Plaintiff filed a Request for Entry of Default against all Defendants on November 15, 2016. (Doc. 9.) The Clerk then entered default against all Defendants on November 18, 2016. (Doc. 13.)

On January 25, 2017, Plaintiff filed its Motion for Default Judgment, in which it requests default judgment against all Defendants. (Doc. 15.) To date, no Defendant has filed a response to this motion. In an order entered on February 21, 2017, the undersigned found that Plaintiff's Motion for Default Judgment was "suitable for decision without oral argument" and vacated the hearing regarding this motion. (Doc. 16.)

On April 4, 2017, the Individual Defendants filed a Notice of Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Bankruptcy Notice"), in which the Individual Defendants state that they "filed a petition for relief under provisions of Chapter 7 of Title 11, U.S.C., . . . Case Number 17-11261, in the Eastern District of California." (Doc. 18.) In an order entered on April 10, 2017, the undersigned noted that the bankruptcy stay applied only to the Individual Defendants and not Defendant California Pride, Inc. (Doc. 19 at 1.) The undersigned then directed Plaintiff to "file a brief addressing whether the Court should rule on Plaintiff's pending Motion for Default Judgment . . . as to only the non-debtor Defendant—California Pride, Inc." (*Id.* at 2.) On April 24, 2017, Plaintiff filed a responsive brief, in which it requested that "the Court consider the pending motion for default judgment and issue an order as it relates to" Defendant California Pride, Inc. (Doc. 20 at 1.)

As such, Plaintiff's Motion for Default Judgment is fully briefed and ready for disposition as to Defendant California Pride, Inc.[1]

---

[1] In an order entered on June 6, 2017, the undersigned directed Plaintiff to supplement the record on certain issues relating to its request for attorneys' fees and costs. (Doc. 22.) Plaintiff filed its responsive brief addressing these issues on June 13, 2017. (Doc. 23.)

## II.    EFFECT OF PENDING BANKRUPTCY PROCEEDINGS

Prior to turning to the merits of Plaintiff's Motion for Default Judgment, the undersigned must first address preliminary issues relating to the bankruptcy proceedings that were recently initiated by the Individual Defendants.

### A.    Scope of Bankruptcy Stay

On April 4, 2017, the Individual Defendants filed the Bankruptcy Notice, in which these Defendants notified the Court that they "filed a petition for relief under the provisions of Chapter 7 of Title 11, U.S.C., . . . Case Number 17-11261, in the Eastern District of California" on April 3, 2017.[2]  (Doc. 18 at 1.)  As the Individual Defendants correctly state in the Bankruptcy Notice, the instant judicial proceeding is automatically stayed against the Individual Defendants under Section 362(a)(1).  *See, e.g.*, 11 U.S.C. § 362(a)(1) (stating that, except for certain delineated exceptions that are inapplicable here, "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was . . . commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002) ("The plain language of § 362(a)(1) prohibits the continuation of judicial actions.").  *See generally* 11 U.S.C. § 301(a) ("A voluntary case under a chapter of this [bankruptcy] title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.").

The next pertinent query is whether this bankruptcy stay extends to Defendant California Pride, Inc.   The April 3, 2017 bankruptcy petition only lists the Individual Defendants as "debtor[s]."  Case Number 17-11261, Doc. 1 at 1 (Bankr. E.D. Cal. Apr. 3, 2017).  Nonetheless, this petition lists Defendant California Pride, Inc. as a business that Defendant Steven Coldren "used in the last 8 years."  *Id.* at 2.  Indeed, the Individual Defendants signed the agreements that are the subject of this litigation on behalf of Defendant California Pride, Inc.  (*See, e.g.*, Doc. 1 at

---

[2] On June 28, 2017, the undersigned's chambers reviewed the docket for the bankruptcy proceedings in Case Number 17-11261 and confirmed that the Individual Defendants filed a Chapter 7 bankruptcy petition on April 3, 2017.  The undersigned's chambers also confirmed that these bankruptcy proceedings remained pending as of June 28, 2017.

35 (the Reseller Agreement); *id.* at 77 (the Amended Note).)  Clearly, the Individual Defendants and Defendant California Pride, Inc. are related to some extent.

However, "[a]s a general rule, the automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate." *In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 246 (9th Cir. 1994) (citation omitted).  "It does not protect non-debtor parties or their property." *Id.* (citation omitted).  "Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." *Id.* (citation omitted).

Some courts have recognized an "unusual circumstances" exception to this general rule where "the judgment against the non-debtor defendant would in effect be a judgment or finding against the debtor." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1268 (C.D. Cal. 2016).  Under this exception, the bankruptcy stay may be extended to non-debtors. *See, e.g.*, *Placido v. Prudential Ins. Co. of Am.*, No. C 09–00668 WHA, 2010 WL 334744, at *1 (N.D. Cal. Jan. 22, 2010).  Nonetheless, the bankruptcy court—and *not* the district court—"would first need to extend the automatic stay under its equity jurisdiction." *Boucher v. Shaw*, 572 F.3d 1087, 1093 n.3 (9th Cir. 2009); *see also Placido*, 2010 WL 334744, at *1 (stating that district courts "do[] not have the jurisdiction to extend the stay to a non-debtor party").  Indeed, "[s]uch extensions, although referred to as extensions of the automatic stay, [are] in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate." *Boucher*, 572 F.3d at 1093 n.3 (quoting *In re Chugach*, 23 F.3d at 247 n.6).

In this case, no party has indicated that the bankruptcy court extended the Section 362(a)(1) stay of litigation to the non-debtor Defendant, California Pride, Inc.  Further, there is no indication on the docket for the bankruptcy proceedings that that bankruptcy court has elected to extend the stay. *See* Case Number 17-11261 (Bankr. E.D. Cal.).  Absent such an action by the bankruptcy court, the Section 362(a)(1) automatic stay does not extend to the non-debtor Defendant, California Pride, Inc., and this matter may properly proceed against this Defendant. *See, e.g.*, *Totten*, 152 F. Supp. 3d at 1268 ("In the absence of a bankruptcy court order extending

7

the automatic stay to the non-debtor in this action, this case will go forward as to [the non-debtor defendant].").

**B.    Default Proceedings May Proceed Against Defendant California Pride, Inc.**

The undersigned must address the additional preliminary issue of whether default proceedings may proceed against only Defendant California Pride, Inc.

Federal Rule of Civil Procedure 54(b) provides, in part, that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  "[U]nder certain circumstances, the court should not enter a default judgment against one or more defendants which is, or likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendants." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872)).

In *Travelers Casualty & Surety Co. of America v. Evans*, the presiding district court judge in the present matter addressed facts that are materially indistinguishable from those in the instant action.  No. 1:10–cv–2003 LJO GSA, 2012 WL 4468422, at *1 (E.D. Cal. Sept. 26, 2012). Specifically, in *Evans*, the proceedings were stayed against an individual defendant due to a "pending bankruptcy."  *Id.*  Nonetheless, the court noted that "[t]he purpose of [Rule 54(b)] is to avoid inconsistent judgments against defaulting defendants and the remaining answering defendants" and these policy considerations "do not apply" where "default has been entered against all [d]efendants."  *Id.* (citation omitted).  The court therefore found that there was "no just reason to delay these proceedings" against the remaining defendants due to an individual defendant's bankruptcy proceedings.  *Id.*; *cf. Morici v. Hashfast Techs. LLC*, Case No. 5:14–cv– 00087 EJD, 2014 WL 4983854, at *3 (N.D. Cal. Oct. 6, 2014) (finding "that the interests of judicial efficiency [were] not served by continuing the stay on all claims," including the claims against the non-debtor defendants, where the claims against the non-debtor defendants were "unique to them" and "[w]hile there may be some factual overlap between those claims and the ones against [the debtor defendant]," the non-debtor defendants did "not persuasively explain[]

why the claims specific to them [could not] proceed on an earlier track in an efficient way"). *But see Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, No. 2:04–cv–01971–MCE–EFB, 2012 WL 6049592, at *3 (E.D. Cal. Dec. 5, 2012) (England, J.) (stating that the claims against the defendants were "substantially similar and related" and finding "that judicial resources [would] be conserved by staying the entire action pending the conclusion of the bankruptcy proceedings, rather than continuing the litigation on a piecemeal basis"); *J & J Sports Prods., Inc. v. Brar*, No. 2:09–cv–3394–GEB–EFB, 2012 WL 4755037, at *2 (E.D. Cal. Oct. 3, 2012) (Brennan, M.J.) (noting that the debtor and non-debtor defendants were "served at the same address . . . and the claims [the] plaintiff assert[ed] against both defendants [were] identical" and finding "that the better course [was] to stay the claims against [the non-debtor defendant] pursuant to the court's inherent authority pending resolution of [the debtor defendant's] bankruptcy petition"); *Zurich Am. Ins. Co. v. Trans Cal Assocs.*, No. CIV. 2:10–01957 WBS KJN, 2011 WL 6329959, at *3 (E.D. Cal. Dec. 16, 2011) (Shubb, J.) (stating that "a later trial of the claims against the [debtor] defendants would involve the relitigation of most if not all of the issues litigated in the first proceeding involving the [non-debtor] defendants" and finding "that the better course [was] to stay the claims against the [non-debtor] defendants . . . pursuant to the court's inherent authority").

Here, as in *Evans*, the Clerk entered default against all three Defendants. (*See* Doc. 13.) Consequently, under the rationale provided by the presiding district court judge in *Evans*, "there is no risk of inconsistent results among" the three Defendants and there is "no just reason to delay these proceedings." 2012 WL 4468422, at *1. Following the presiding district court judge's approach in *Evans*, the undersigned recommends that—notwithstanding the automatic stay as to the Individual Defendants—the presiding district court judge find that this matter may proceed against only Defendant California Pride, Inc.

### III. MOTION FOR DEFAULT JUDGMENT

The undersigned now turns to the merits of Plaintiff's Motion for Default Judgment. For the reasons provided below, the undersigned finds that Plaintiff's request for default judgment has merit as to Defendant California Pride, Inc.

## A.    Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  *See* Fed. R. Civ. P. 55(b)(2). "[D]efault does not entitle the non-defaulting party to a default judgment as a matter of right . . . ." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 785 (9th Cir. 2011).  Rather, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted).

In *Eitel v. McCool*, the Ninth Circuit identified seven "[f]actors which may be considered by courts in exercising discretion as to the entry of a default judgment," including (1) "the possibility of prejudice to the plaintiff," (2) "the merits of plaintiff's substantive claim," (3) "the sufficiency of the complaint," (4) "the sum of money at stake in the action," (5) "the possibility of a dispute concerning material facts," (6) "whether the default was due to excusable neglect," and (7) "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  782 F.2d 1470, 1471–72 (9th Cir. 1986).  The "general rule" is "that default judgments are ordinarily disfavored."  *Id.* at 1472.    Nonetheless, in applying the *Eitel* "discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, [the] court must take the well-pleaded factual allegations of [the complaint] as true." (citing *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986))). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation omitted). Further, "necessary facts not contained in the pleadings, and claims which are legally insufficient,

are not established by default." *Id.* (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

The undersigned shall address each of the *Eitel* factors, in turn. For the reasons that follow, the undersigned finds that these factors weigh in favor of the entry of default judgment against Defendant California Pride, Inc.

## B. The Possibility of Prejudice to Plaintiff

"The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment." *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *2 (E.D. Cal. Nov. 25, 2015). In the present matter, Defendant California Pride, Inc.—and, indeed, all Defendants—failed to answer the Complaint, thereby stalling this litigation and potentially prejudicing Plaintiff by leaving it with no recourse to recover the loss Plaintiff alleges was caused by Defendant California Pride, Inc.'s actions. The undersigned therefore finds that the first *Eitel* factor weighs in favor of the entry of default judgment. *See, e.g.*, *Otter Prods. LLC v. Ace Colors Fashion, Inc.*, No. 2:14–cv–00141–ODW(PJWx), 2014 WL 4187947, at *3 (C.D. Cal. Aug. 21, 2014) (stating that "[a] plaintiff suffers prejudice" under the first *Eitel* factor "if there is no recourse for recovery absent default" (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 499)).

## C. The Merits of Plaintiff's Claims and the Sufficiency of the Complaint

"The second and third *Eitel* factors address the merits and sufficiency of [the plaintiff's] claims pled in the complaint." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012). *See generally U.S. ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 1:12–cv–1287–AWI–BAM, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013) (addressing the second and third *Eitel* factors "together because of the relatedness of the two inquiries"). "Together, 'these two factors require that a plaintiff state a claim on which the plaintiff may recover.'" *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, CASE NO.: CV 13-09221-SJO (FFMx), 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)); *see, e.g., Discovery Commc'ns,*

*Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001) ("The Ninth Circuit has suggested that the . . . two *Eitel* factor[s] . . . involving the substantive merits of [the plaintiff's] claims and the sufficiency of the complaint . . . 'require that [the] plaintiff's allegations state a claim on which they may recover.'" (quoting *Kloepping v. Fireman's Fund*, No. C-94-2684, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996))).

Here, the Complaint includes a single claim for breach of contract brought against Defendant California Pride, Inc., as well as the Individual Defendants. (*See* Doc. 1 ¶¶ 24–34.) As to Defendant California Pride, Inc., Plaintiff alleges in the Complaint that this Defendant breached the Amended Note. (*See id.* ¶¶ 24–29.) The Amended Note includes a choice-of-law provision that states it "shall be governed by and construed in accordance with the internal laws of the State of California without regard to principles of conflicts of law." (Doc. 1 at 76.) Consequently, pursuant to this choice-of-law provision, the undersigned shall apply California law when addressing Plaintiff's breach-of-contract claim against Defendant California Pride, Inc.[3]

"To establish a breach of contract under California law, Plaintiff must show the following: (1) existence of a contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages." *Gulf Ins. Co. v. Hi-Voltage Wire Works, Inc.*, 388 F. Supp. 2d 1134, 1136 (E.D. Cal. Apr. 28, 2005) (citing *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001) and *Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (1969)). "Generally, whether a party has performed as required by a contract, or breached it, is a question

---

[3] "In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state, in this case California." *Leprino Foods Co. v. JND Thomas Co.*, Case No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *6 (E.D. Cal. Jan. 12, 2017) (citing *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009)). "Under California conflict of law rules, the parties may agree to what law controls, unless the choice is contrary to a fundamental interest of a state with a materially greater interest." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 313 (9th Cir. 1996) (citing *Thomas v. Wentworth Hotel Co.*, 158 Cal. 275 (1910)). Additionally, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law." *1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 513–14 (2010) (citation omitted).

　　Here, there is no indication in the record that the parties' choice of law is contrary to a fundamental interest, or was not freely and voluntarily agreed-upon. Further, the forum state has a substantial relationship to Defendants and the transaction at issue, as the subject of the parties' agreements is a business located in California. The undersigned therefore finds that the choice-of-law provision is enforceable. Consequently, the undersigned shall apply California law when analyzing Plaintiff's breach-of-contract claim.

of fact." *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1161 (E.D. Cal. 2009) (citations omitted).

Plaintiff has established each of the elements of its breach-of-contract claim against Defendant California Pride, Inc. As to the first element, Plaintiff and Defendant California Pride, Inc. entered into a valid contract—the Amended Note—whereby Defendant California Pride, Inc. agreed to make quarterly payments to Plaintiff in exchange for Plaintiff "not pursuing its legally available remedies at the time," (Doc. 1 ¶ 25), *i.e.*, Plaintiff's remedies under the parties' prior agreements, (*see id.* at 74 (constituting the Amended Note, in which Plaintiff agrees to extend terms and deadlines associated with the parties' prior agreements)). Regarding the second element, Plaintiff asserts in the Complaint that it "performed, or was relieved from performing, all of its obligations pursuant to the terms of the Amended Note." (*Id.* ¶ 27.) As to the third element, Plaintiff sufficiently asserts in the Complaint that Defendant California Pride, Inc. breached the terms of "the Amended Note by failing to timely make the quarterly payments due thereunder." (*Id.* ¶ 26.) Finally, Plaintiff alleges that it suffered damages due to Defendant California Pride, Inc.'s conduct in the form of not receiving the funds due and owing under the Amended Note. (*Id.* ¶ 28.)

Based on the foregoing, the undersigned finds that Plaintiff has adequately stated a claim for breach of contract against Defendant California Pride, Inc. *See, e.g.*, *Gulf Ins. Co.*, 388 F. Supp. 2d at 1136 (providing the elements for a breach-of-contract claim under California law (citations omitted)). The undersigned therefore finds that the second and third *Eitel* factors are satisfied here. *See, e.g.*, *Rolex Watch U.S.A., Inc.*, 2015 WL 9690322, at *3 (stating that the second and third *Eitel* factors together "require that a plaintiff state a claim on which the plaintiff may recover" (citation omitted)).

**D. The Sum of Money at Stake**

Turning to the fourth *Eitel* factor, "the court must [next] consider the amount of money at stake in relation to the seriousness of [the defendant's] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77. "This requires the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F.

Supp. 2d 916, 921 (C.D. Cal. 2010) (citing *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04–2559 JSW, 2006 WL 2527776, at \*4 (N.D. Cal. Aug. 30, 2006)). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to [the] defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (citing *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at \*12 (N.D. Cal. May 29, 2007)); *see also BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 639500, at \*5 (E.D. Cal. Feb. 27, 2012) ("In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment." (citations omitted)). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at \*3 (N.D. Cal. Apr. 6, 2012) (citation omitted).

In support of its Motion for Default Judgment, Plaintiff filed the declaration of Chad Cunningham, a Director of U.S. Marketing, Lubes & Specialty Products for Plaintiff. (Doc. 15, Ex. 3.) In his declaration, Mr. Cunningham states that, "as a direct and proximate result of" the failure of Defendant California Pride, Inc. "to pay all amounts due and owing under the Amended Note"—as well as the Individual Defendants' similar failure to pay this debt pursuant to the Guaranty—"Defendants owe [Plaintiff] $187,469.39 in damages, exclusive of interest and attorneys' fees." (*Id.* ¶ 4.) Additionally, attached to Mr. Cunningham's declaration is an invoice from Plaintiff to Defendant California Pride, Inc. dated November 7, 2015, which provides a total "[a]mount [d]ue" of $187,469.39. (*Id.* at 5.)

The undersigned finds that Plaintiff has provided adequate evidence in the form of declarations and documentation to support its assertion that Plaintiff suffered harm in the amount of $187,469.39 due to Defendant California Pride, Inc.'s conduct. Furthermore, the record does not include any evidence or assertions indicating that $187,469.39 plus prejudgment and post-judgment interest is a disproportionate amount of money compared to the harm caused by Defendant California Pride, Inc.'s conduct. The undersigned therefore finds that the sum of money at stake in this action—$187,469.39 plus prejudgment and post-judgment interest—is sufficiently proportionate to the harm caused by Defendant California Pride, Inc.'s conduct to

satisfy the fourth *Eitel* factor.  *See, e.g.*, *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921 (finding that the fourth *Eitel* factor weighed in favor of granting default judgment where, in part, the plaintiff "proffer[ed]" a declaration providing the amount "still due and owing").

**E.      The Possibility of a Dispute Concerning the Material Facts**

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case."  *United States v. Sterling Centrecorp, Inc.*, No. 2:08–cv–02556 MCE JFM, 2011 WL 2198346, at *6 (E.D. Cal. June 6, 2011) (quoting *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)).   There is little possibility of dispute in this case.  Plaintiff included well-plead allegations in the Complaint—which the Court accepts as true in the instant analysis—that Defendant California Pride, Inc. breached the terms of the Amended Note.  (*See* Doc. 1.)   Additionally, Plaintiff has provided evidence supporting its assertion that Defendant California Pride, Inc. owed an outstanding balance of $187,469.39 as of November 7, 2015.  (Doc. 15, Ex. 3 at 5.)   Finally, Defendant California Pride, Inc. declined to participate—or even appear—in this case to contest Plaintiff's allegations.   The undersigned therefore finds that, based on the record in this case, the fifth *Eitel* factor weighs in favor of granting default judgment.  *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1013 ("Since [the plaintiff's] factual allegations are presumed true and [the defendant] has failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment."); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922 ("Since [the plaintiff] has supported its claims with ample evidence, and [the] defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

**F.      Whether Defendant California Pride, Inc.'s Default Was Due to Excusable Neglect**

"The [sixth] *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect."  *Vogel*, 992 F. Supp. 2d at 1013 (citation omitted).  *See generally United States v. Sanders*, Case No. 1:16-cv-00031-DAD-SAB, 2016 WL 5109939, at *4 (E.D. Cal. Sept. 20, 2016) ("Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*,

219 F.R.D. 494, 500 (C.D. Cal. 2003))).  In the present action, the record reflects that Plaintiff effectuated service on Defendant California Pride, Inc. on October 8, 2016.  (*See* Doc. 6.) Nonetheless, Defendant California Pride, Inc. failed to respond to the instant Motion for Default Judgment or otherwise participate in this litigation.  It is therefore "unlikely" that Defendant California Pride, Inc.'s "failure to answer, and the resulting default[] entered by the Clerk of Court, [was] the result of excusable neglect."  *State Farm Life Ins. Co. v. Canul*, No. 1:11–cv–01787, 2012 WL 1192778, at *3 (E.D. Cal. Apr. 10, 2012) (citing *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)); *see, e.g.*, *Kuei*, 194 F. Supp. 2d at 1005 (finding that the defendants' default could not "be attributable to excusable neglect" where they "were properly served with the [c]omplaint, the notice of entry of default, [and] the papers in support of the . . . motion" for entry of default judgment); *see also Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable neglect'"). Accordingly, the undersigned finds that this factor weighs in favor of granting Plaintiff's request for the entry of default judgment.

## G.      Policy Favoring Decisions on the Merits

The seventh and final *Eitel* factor requires consideration of "the strong policy favoring decisions on the merits."  *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-LB, 2016 WL 1559717, at *10 (N.D. Cal. Apr. 18, 2016) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  Of course, the "general rule" is "that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citation omitted); *see also Collin v. Zeff*, No. CV12–8156 PSG (AJW), 2013 WL 3273413, at *7 (C.D. Cal. June 24, 2013) ("The Ninth Circuit has emphasized that 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" (quoting *United States v. Signed Pers. Check No. 730 of Ybran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010))).  As default judgment would dispose of this case on grounds other than the merits of Plaintiff's claim against Defendant California Pride, Inc., the undersigned finds that this factor

weighs against the entry of default judgment. *See, e.g.*, *United States v. Ordonez*, No. 1:10–cv–01921–LJO–SKO, 2011 WL 1807112, at *3 (E.D. Cal. May 11, 2011) (noting that the seventh *Eitel* factor "inherently weighs strongly against awarding default judgment in every case"). Nonetheless, as Defendant California Pride, Inc.'s failure to participate in this litigation makes "a decision on the merits impractical, if not impossible," the Court "is not precluded from entering default judgment against" this Defendant. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

In summary, six of the *Eitel* factors weigh in favor of default judgment, while the strong policy in favor of deciding cases on their merits weighs against the entry of default judgment. "While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations omitted). As only this policy consideration weighs against default judgment, the undersigned finds that, on balance, the *Eitel* factors favor the entry of default judgment against Defendant California Pride, Inc. *See, e.g.*, *Ordonez*, 2011 WL 1807112, at *3 (finding that, "[i]n the aggregate," the seventh *Eitel* factor "is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment"); *Warne*, 2012 WL 1156402, at *3 ("In the aggregate, the seventh *Eitel* factor is outweighed by the other six factors that weigh in favor of default judgment." (citation omitted)).

For these reasons, the undersigned recommends that the presiding district court judge grant in part Plaintiff's Motion for Default Judgment, (Doc. 15), to the extent Plaintiff requests that the Court enter default judgment against Defendant California Pride, Inc.

## IV.    AMOUNT OF JUDGMENT

The undersigned next turns to the damages requested by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *Warne*, 2012 WL 1156402, at *4 (quoting *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010)). "The Court considers Plaintiff's declarations, calculations, and other documentation

of damages in determining if the amount at stake is reasonable." *United States v. Yermian*, Case No. SACV 15-0820-DOC (RAOx), 2016 WL 1399519, at \*3 (C.D. Cal. Mar. 18, 2016) (quoting *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06–CV–03594, 2007 WL 1545173, at \*12 (N.D. Cal. May 29, 2007)). Additionally, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris USA, Inc.*, 219 F.R.D. at 499. "[I]f the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Id.* at 498 (citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). "Entry of default judgment for money is appropriate without a hearing if 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Warne*, 2012 WL 1156402, at \*4 (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)); *see also Yermian*, 2016 WL 1399519, at \*3 ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment." (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991))).

Furthermore, "pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'" *Drew*, 2016 WL 1559717, at \*11 (quoting Fed. R. Civ. P. 54(c)). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision as to whether or not it is in his best interest to answer." *Id.* (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008) and *Bd. of Trs. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at \*3–5 (N.D. Cal. June 17, 2009)).

Here, Plaintiff requests $187,469.39 in actual damages from all Defendants—"jointly and severally"—in the Complaint. (Doc. 1 at 7.) This amount in damages is supported by the declaration of Plaintiff's Director of U.S. Marketing, Lubes & Specialty Products, Chad Cunningham, in which Mr. Cunninham states that, "as a direct and proximate result of" the failure of Defendant California Pride, Inc. "to pay all amounts due and owing under the Amended Note"—as well as the Individual Defendants' similar failure to pay this debt pursuant to the

Guaranty—"Defendants owe [Plaintiff] $187,469.39 in damages, exclusive of interest and attorneys' fees." (Doc. 15, Ex. 3 ¶ 4.) Plaintiff also filed documentation supporting its request for actual damages in the form of an invoice from Plaintiff to Defendant California Pride, Inc. dated November 7, 2015, which provides a total "[a]mount [d]ue" of $187,469.39. (*Id.* at 5.)

The undersigned finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden in establishing an amount of damages of $187,469.39. The undersigned therefore recommends that the presiding district court judge award Plaintiff actual damages in the amount of $187,469.39.

## V.    INTEREST

Plaintiff also requests both prejudgment and post-judgment interest on this amount of damages. The undersigned shall address each of these forms of interest, in turn.

### A.    Prejudgment Interest

Turning first to Plaintiff's request for prejudgment interest, "[i]t is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism." *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) (citations omitted). "Thus, state law applies to [a plaintiff's] claim for prejudgment interest under state law unless federal law preempts it." *Id.* (citation omitted).

As noted previously, the Amended Note has a choice-of-law provision, which states that this agreement is governed by California law. (Doc. 1 at 76.) The undersigned shall therefore apply California state law in determining whether Plaintiff should be awarded prejudgment interest.

"Under California law, prejudgment interest is governed by Civil Code section 3287 . . . ." *Rasmussen v. Dublin Rarities*, No. C 14–1534 PJH, 2015 WL 1133189, at *19 (N.D. Cal. Feb. 27, 2015). Section 3287(a) provides, in relevant part, that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." "The test for recovery of prejudgment interest under . . . section 3287, subdivision (a) is

whether [the] defendant actually knows the amount owed or from reasonably available information could the defendant have computed that amount." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 774 (2002) (citation omitted). Section 3287 "does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence and it is not ascertainable from truthful data supplied by the claimant to his debtor." *Id.* (citation omitted). Ultimately, "the decision to award prejudgment interest is within the Court's discretion." *Rasmussen*, 2015 WL 1133189, at *19 (citing *Alexander v. Incway Corp.*, No. CV 11–8851 DSF (VBKx), 2013 WL 5603932, at *21 (C.D. Cal. Oct. 11, 2013), *reversed in part on other grounds by* 633 F. App'x 472 (9th Cir. 2016)).

In this case, Plaintiff has sufficiently demonstrated a specific and certain amount of actual damages—$187,469.39. Consequently, Plaintiff is entitled to prejudgment interest under Section 3287(a). *See, e.g., Id.* ("[B]ecause the amount of damages on [the plaintiff's] claims is certain, he is eligible to receive pre-judgment interest.").

As to the commencement date for prejudgment interest, "plaintiff is entitled to recover interest from the date payment was due." *Golden Gate Nut Co. v. CIB Int'l Trading, Inc.*, No. 2:13–cv–1660–GEB–EFB, 2014 WL 3851534, at *6 (E.D. Cal. Aug. 5, 2014); *see also* Cal. Civ. Code § 3287(a) (stating that "[a] person who is entitled to recover damages certain" is "entitled . . . to recover interest thereon from" the "particular day" when "the right to recover . . . is vested"). Here, the full remaining amount of the debt under the Amended Note became due and owing when Defendant California Pride, Inc. failed to satisfy the terms of the Termination Agreement by November 30, 2015.[4] (*See* Doc. 1 at 85.) As such, the day after this deadline—December 1, 2015—is the commencement date for purposes of the prejudgment interest analysis.

---

[4] In his declaration, an employee of Plaintiff, Mr. Cunningham, states that Plaintiff "began charging past-due interest under the Amended Note starting on November 17, 2015 which is the day after [Plaintiff's invoice] for the amount due under the Amended Note was due and payable." (Doc. 15, Ex. 3 ¶ 5.) However, this breach date does not conform to the parties' agreements. In particular, under the terms of the Termination Agreement, the debt became due once Defendant California Pride, Inc. failed to satisfy the terms of the Termination Agreement by November 30, 2015. (*See* Doc. 1 at 85.) The undersigned therefore finds that the date the amount became due and owing under the parties' agreements is the day after this deadline—namely, December 1, 2015.

Finally, regarding the rate of prejudgment interest, California Civil Code Section 3289(a) provides that "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." The Amended Note provides that, "[i]n the event of a default under the [Amended] Note, . . . the principal shall bear interest at a default rate of two percent . . . higher than the Note Rate." (Doc. 1 at 75.) The Amended Note defines the term "Note Rate" as "10.00% per annum." (*Id.*) Thus, the parties agreed in the Amended Note to a rate of interest of twelve percent per annum, (*see id.*), and this agreed-upon rate of prejudgment interest governs in this case, *see* Cal. Civ. Code § 3289(a).

In summary, Plaintiff is entitled to prejudgment interest at a rate of twelve percent per annum commencing on December 1, 2015, through the date a judgment is entered.

**B.      Post-Judgment Interest**

Plaintiff requests post-judgment interest in its Motion for Default Judgment. (*See* Doc. 15 at 2.) This request also has merit.

Unlike prejudgment interest, "[i]t is settled that even in diversity cases '[p]ost-judgment interest is determined by federal law.'" *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) (second alteration in original) (quoting *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 801 F.2d 1560, 1570 (9th Cir. 1986)); *see, e.g.*, *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013) ("In diversity cases . . . , the court looks to state law to determine the rate of prejudgment interest, while federal law determines the rate of post judgment interest." (citation omitted)). 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Under the plain language of Section 1961, "postjudgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citation omitted). Further, "[i]nterest accrues from the date of a judgment whether or not the judgment expressly includes it, because 'such interest follows as a legal incident from the statute providing for it.'" *Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 644 (9th Cir. 1984) (quoting *Blair v. Durham*, 139 F.2d 260, 261 (6th Cir. 1943)).

"Post-judgment interest should be awarded on the entire amount of the judgment, including any pre-judgment interest," *Lagstein*, 725 F.3d at 1056 (citation omitted), and attorneys' fees and costs, *see, e.g.*, *Air Separation, Inc.*, 45 F.3d at 290 (citations omitted). "Typically, post-judgment interest is awarded from the date of judgment until the judgment is satisfied." *Lagstein*, 725 F.3d at 1056; *see, e.g.*, 28 U.S.C. § 1961(a) (stating that post-judgment interest "shall be calculated from the date of the entry of the judgment").

Based on the foregoing, the undersigned recommends that the presiding district court judge award post-judgment interest to Plaintiff on the entire amount of the judgment, including damages, prejudgment interest, and attorneys' fees and costs.

As to the rate of post-judgment interest, Section 1961(a) provides, in relevant part, that "[s]uch interest shall be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." "Thus, the appropriate rate for [post-judgment] interest should be determined by the Court based on the date of the entry of judgment." *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *8 n.1 (E.D. Cal. Nov. 9, 2016).

## VI.    ATTORNEYS' FEES AND COSTS

Plaintiff also requests that the Court award attorneys' fees and costs. (*See, e.g.*, Doc. 15 at 2.) The undersigned shall separately address the fees and costs issues.

### A.    Attorneys' Fees

"Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Like the determination for prejudgment interest, "[a] federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) (citation omitted). "As the underlying breach of contract claim is a state law claim, this court must apply California law on attorneys' fees." *Suretec Ins. Co. v. BRC Constr., Inc.*, No. 2:11–cv–2813 KJM AC, 2013 WL 6199021, at *2 (E.D. Cal. Nov. 27, 2013) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

In California, "the prevailing party in an action is entitled to recover its costs," including "[a]ttorney fees, when authorized by" (1) "[c]ontract," (2) "[s]tatute," or (3) "[l]aw." *Royster Constr. Co. v. Urban W. Cmtys*, 40 Cal. App. 4th 1158, 1169 (1995) (citation omitted). "Whether a contractual attorney fee clause provides for a fee award in a particular case is a question of contract interpretation." *Windsor Pac. LLC v. Samwood Co.*, 213 Cal. App. 4th 263, 273 (2013). In this case, the Amended Note provides that "[Defendant California Pride, Inc.] agrees to reimburse [Plaintiff] on demand for all legal fees and other costs and expenses incurred in collection or enforcing this [Amended] Note." (Doc. 1 at 76.) Consequently, the Amended Note provides that Plaintiff may receive attorneys' fees "incurred" in enforcing the terms of the Amended Note by litigating this action. (*Id.*)

Under California law, "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Cal. Civ. Code § 1021. California Civil Code Section 1717 "governs the issue of attorneys' fees under a contract," *Makreas v. First Nat'l Bank of N. Cal.*, Case No. 11–cv–02234–JST, 2014 WL 2582027, at *5 (N.D. Cal. June 9, 2014), and provides the following, in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a). Consistent with Section 1717(a), "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."[5] *Margolin v. Reg'l Planning Comm'n of L.A. Cty.*, 134 Cal. App. 3d 999, 1004 (1982) (citations omitted).

---

[5] The undersigned notes that the Amended Note does not impose a reasonableness requirement on attorneys' fees. (*See* Doc. 1 at 76.) Nonetheless, as Section 1717(a) specifically provides for attorneys' fees in this type of breach-of-contract action, that statute governs this analysis. *See, e.g.*, *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 709 (1998) ("[Section 1717(a)] expressly refers to, and therefore governs, 'attorney's fees . . . which are incurred to enforce [a] contract.'" (quoting Cal. Civ. Code § 1717(a))). It is also important to note that, "[a]lthough

23

The amount of "[r]easonable attorney's fees shall be fixed by the court." Cal. Civ. Code § 1717(a). "[A]scertaining the fee amount is left to the trial court's sound discretion," as "[t]rial judges . . . are in the best position to assess the value of the professional services rendered in their courts." *Ellis v. Toshiba Am. Info. Sys., Inc.*, 218 Cal. App. 4th 853, 882 (2013) (citations omitted). Nonetheless, "the California Supreme Court has emphasized that courts 'may not invoke equitable considerations unrelated to litigation success' to determine the size of a fee award." *Hopkins v. Wells Fargo Bank, N.A.*, Civ. No. 2:13–444 WBS CKD, 2014 WL 2987753, at *3 (E.D. Cal. July 1, 2014) (quoting *Hsu v. Abbara*, 9 Cal. 4th 863, 877 (1995)). Finally, "the burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable." *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 98 (2009) (citation omitted).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). As to the computation of hours, "trial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). The Court must then exclude "hours that were not reasonably expended in pursuit of successful claims," *Harman v. City & Cty. of S.F.*, 158 Cal. App. 4th 407, 417 (2007) (citation omitted), "[a]ttorney time spent on services which produce no tangible benefit for the client," *Meister v. Regents of Univ. of Cal.*, 67 Cal. App. 4th 437, 452 (1998), and "duplicative or excessive" work, *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006).

"Because time records are not required under California law . . . , there is no required level of detail that counsel must achieve." *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 699 (2014) (alteration in original) (quoting *PLCM Grp.*, 22 Cal. 4th at 1098). Indeed, "[i]t is well established that 'California courts do not require detailed time records, and trial courts have

---

the terms of the contract may be considered, they do not compel any particular award." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1096 (2000) (citations omitted). The undersigned shall therefore apply the reasonableness standard provided under Section 1717(a). *See, e.g.*, *Makreas v. First Nat'l Bank of N. Cal.*, Case No. 11–cv–02234–JST, 2014 WL 2582027, at *4 (N.D. Cal. June 9, 2014) (addressing a contractual provision that provided for attorneys' fees without any reasonableness limitation and applying the reasonableness standard under Section 1717(a)); *Kleefeld v. Marrero*, No. B224011, 2011 WL 1679050, at *5–6 (Cal. Ct. App. May 5, 2011) (addressing a contractual provision that included a fees provision for "actual attorneys' fees" and finding that "[t]he parties contracted under the laws of the State of California, which mandate that a court may only award contractual attorney fees to the extent that they are reasonable").

discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." *Id.* at 698 (quoting *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375–76 (2009)).

Regarding the reasonable-rate determination, "[t]here is no requirement that the reasonable market rate mirror the *actual* rate billed." *Rankin*, 226 Cal. App. 4th at 463. Instead, "[t]he reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp.*, 22 Cal. 4th at 1095 (citations omitted). "Generally, the courts will look to equally difficult or complex types of litigation to determine which market rates to apply." *Rankin*, 226 Cal. App. 4th at 463 (citation omitted).

The presiding district court judge in this case previously found that the "current reasonable range of attorneys' fees" for cases litigated in the Eastern District of California's Fresno division "is between $250 and $400 per hour." *Barkett v. Sentosa Props. LLC*, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing *Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014)). Within this range, "the highest rates [are] generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Id.* (quoting *Silvester*, 2014 WL 5797828, at *4). Additionally, "$300 is the upper range for competent attorneys with approximately a decade of experience." *Id.* (quoting *Silvester*, 2014 WL 5797828, at *4); *see also Silvester*, 2014 WL 7239371, at *4 (noting that courts in Fresno division of this District "found that the accepted range is between $175 and $300 per hour" for "competent practitioners with less than ten years of experience" (citations omitted)). Finally, courts in the Fresno division of this District previously found that "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." *Silvester*, 2014 WL 7239371, at *4 (citations omitted); *cf. Franco v. Ruiz Food Prods., Inc.*, No. 1:10–cv–02354–SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants"), *cited with approval by Miller v. Schmitz*, No. 1:12–CV–00137–LJO–SAB, 2014 WL 642729, at *4 (E.D. Cal. Feb. 18, 2014) (O'Neill, J.).

In this case, Plaintiff requests the following fees: (1) Darin L. Brooks—5.3 hours at a rate of $415 per hour for a total of $2,199.52; (2) John G. George, Jr.—29.8 hours at a rate of $342.04 per hour for a total of $10,192.67; (3) Meagan W. Glover—17.0 hours at a rate of $275.80 per hour for a total of $4,688.62; (4) Michael L. Lillibridge—.4 hours at a rate of $241.86 per hour for a total of $96.75; (5) Dawn Ceizler—2.8 hours at a rate of $225 per hour for a total of $630.00; (6) Leslie Zunker, a paralegal—26 hours at a rate of $193.04 for a total of $5,019.00; and (7) a legal assistant—3.1 hours at a rate of $50 per hour for a total of $155.00. (*See* Doc. 15, Ex. 4 ¶ 8.) As to the number of hours requested, Plaintiff has provided evidence in the form of a declaration supporting its statement regarding the number of hours spent on this matter. (*See, e.g., id.*) Under the pertinent California case law, this evidence is sufficient to support Plaintiff's request as to the total number of hours. *See, e.g., Syers Props. III, Inc.*, 226 Cal. App. 4th at 699 ("It is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." (quoting *Raining Data Corp.*, 175 Cal. App. 4th at 1375–76)). Additionally, the Court is not aware of any information indicating that the number of requested hours is unreasonable. The undersigned therefore finds that the number of hours requested is reasonable.

Turning to the requested rates, Plaintiff requests an hourly rate of $415 per hour for Darin L. Brooks, (*see* Doc. 15, Ex. 4 ¶ 8), an attorney with twenty years of experience, (Doc. 23, Ex. 2 ¶ 3). This hourly rate exceeds the maximum reasonable hourly rate of $400 in the community for attorneys with similar levels of experience.[6] *See, e.g., Barkett*, 2015 WL 5797828, at \*5 (citing

---

[6] In support of the requested hourly rates, Plaintiff submitted decisions by courts in other jurisdictions approving certain rates for some of Plaintiff's attorneys. (*See, e.g.*, Doc. 23, Ex. 1 at 6–7; *id.*, Ex. 2 at 7–17; *id.*, Ex. 3 at 5–16; *id.*, Ex. 4 at 5–16.) Nonetheless, hourly rate determinations from other jurisdictions are not relevant to the determination of the reasonable hour rates for this community. *See, e.g., PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("The reasonable hourly rate is that prevailing in the community for similar work." (citation omitted)); *cf. Pointer v. Bank of Am., N.A.*, No. 2:14-CV-00525-KJM-CKD, 2016 WL 7404759, at \*17 (E.D. Cal. Dec. 21, 2016) ("[T]he 'relevant legal community' for the purposes of the lodestar calculation is generally the forum in which the district court sits." (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013))).

Plaintiff also references the applicable "Laffey" Matrix rates in the materials Plaintiff submitted in support of its request for attorneys' fees. (*See, e.g.*, Doc. 23, Ex. 1 ¶ 3; *id.*, Ex. 2 ¶ 3; *id.*, Ex. 3 ¶ 3; *id.*, Ex. 4 ¶ 3.) However, courts in this District have "rejected rates based upon the Laffey Matrix as irrelevant to determining reasonable hourly rates for counsel in the Eastern District of California." *Gonzalez-Chavez v. City of Bakersfield*, Case No. 1:12-cv-02053 JLT, 2016 WL 2898132, at \*6 (E.D. Cal. May 17, 2016) (citation omitted). *See generally Prison Legal News*

*Silvester*, 2014 WL 7239371, at *4); *see also Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *12 (E.D. Cal. Oct. 4, 2016) ("In the Fresno Division of the Eastern District of California, attorneys with . . . twenty or more years of experience are awarded $350.00 to $400.00 per hour." (collecting cases)). As Plaintiff has submitted adequate evidence in the form of a declaration establishing Mr. Brooks' twenty years of relevant experience, (*see* Doc. 23, Ex. 2 at 2–4), the undersigned finds that an hourly rate at the top of the pertinent range—namely, $400 per hour—is reasonable for Mr. Brooks. Accordingly, the Court finds that the lodestar figure for Mr. Brooks is $2,120.00 (5.3 hours x $400).

Plaintiff next requests an hourly rate of $342.04 for John G. George, Jr., (*see* Doc. 15, Ex. 4 ¶ 8), an attorney with nine years of experience, (Doc. 23, Ex. 3 ¶ 3). This requested rate similarly exceeds the maximum reasonable rate in this community, which is $300 for an attorney with ten years of experience. *See, e.g.*, *Barkett*, 2015 WL 5797828, at *5 (concluding, in part, "that $300 is the upper range for competent attorneys with approximately a decade of experience" (citation omitted)). Given that Plaintiff has submitted adequate evidence establishing Mr. George's nine years of experience, (*see* Doc. 23, Ex. 3 ¶ 2), the undersigned finds that a reasonable rate for just short of ten years of experience—specifically, $290—is reasonable for Mr. George, *cf. BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 2920856, at *3 (E.D. Cal. July 17, 2012) (stating that "the range of reasonable hourly rates for competent attorneys with less than ten years of experience is $250–$300 per hour" and approving a rate at the top of this range—$300—for an attorney with nine years of experience because the attorney "was solely responsible for litigating this case, and . . . the amount at stake, as well as the results achieved, were substantial"). The undersigned therefore finds that the total lodestar figure for Mr. George is $8,642.00 (29.8 hours x $290).

Plaintiff also requests an hourly rate of $275.80 for Meagan W. Glover, (*see* Doc. 15, Ex. 4 ¶ 8), an attorney with seven years of experience, (*see* Doc. 23, Ex. 4 ¶ 3). This requested rate is within the range of rates that courts in this division found reasonable for attorneys with similar

---

*v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.").

levels of experience. *See, e.g.*, *Barkett*, 2015 WL 5797828, at *5 (approving a rate of $285 per hour for an attorney due to "counsel's eight years of experience and the nature of the motion"); *White v. Rite of Passage Adolescent Treatment Ctrs. & Schs., Inc.*, No. 1:13–cv–1871 LJO–BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014) (approving a rate of $300 per hour for an attorney with "six years of experience" who "prove[d] to be both competent and effective"); *Rodriguez v. Cty. of Stanislaus*, No. 1:08–cv–00856 OWW GSA, 2010 WL 4323017, at *1–2 (E.D. Cal. Oct. 26, 2010) (approving a rate of $275 per hour for an attorney "with eight years of experience"). *But see In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 843 (E.D. Cal. 2016) (approving a rate of $220.00 per hour for an attorney with "seven years of experience" and "an unknown amount of experience in the" specific area of law at issue in the case); *Fitzgerald v. Law Office of Curtis O. Barnes*, No. 1:12–cv–00071–LJO–GAS, 2013 WL 1627740, at *4 (E.D. Cal. Apr. 15, 2013) (approving a rate of $250.00 per hour for an attorney with "six or seven years' experience as an attorney"). Additionally, Plaintiff has submitted evidence in the form of a declaration establishing that Ms. Glover has seven years of experience. (*See* Doc. 23, Ex. 4 ¶¶ 2–3.) The undersigned therefore finds that the requested rate of $275.80 is reasonable for Ms. Glover. Accordingly, the undersigned finds that the lodestar figure for Ms. Glover is $4,688.60 (17.0 hours x $275.80).

Plaintiff further requests an hourly rate of $241.86 for Michael L. Lillibridge, a staff attorney who graduated from law school in 1997 and has worked for counsel's firm "for approximately 9 years." (Doc. 23, Ex. 2 ¶ 5.) Based on Plaintiff's submissions, it is not clear whether Mr. Lillibridge has practiced since his graduation from law school. (*See id.*) Regardless, the requested rate of $241.86 is below the rate for attorneys with Mr. Lillibridge's nine years of experience at their present firm. *See, e.g.*, *BR North 223, LLC*, 2012 WL 2920856, at *3 (stating that "the range of reasonable hourly rates for competent attorneys with less than ten years of experience is $250–$300 per hour"). As Plaintiff has provided evidence in the form of a declaration demonstrating Mr. Lillibridge's experience, (*See* Doc. 23, Ex. 2 ¶ 5), the undersigned finds that the requested rate of $241.86 is reasonable for Mr. Lillibridge. Consequently, the undersigned finds that the lodestar figure for Mr. Lillibridge is $96.74 (.4 hours x $241.86).

Plaintiff also requests an hourly rate of $225.00 for Dawn Ceizler, (*see* Doc. 15, Ex. 4 ¶ 8), an attorney with sixteen years of experience, (*see* Doc. 23, Ex. 1 ¶ 3). This requested rate is below the rates courts found reasonable for an attorney with Ms. Glover's level of experience. *See, e.g.*, *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1032 (E.D. Cal. 2011) (approving a rate of $350 for an attorney with sixteen years of experience); *cf. In re Taco Bell*, 222 F. Supp. 3d at 840 ("Courts in the Eastern District of California, Fresno Division, have found that the reasonable hourly rates for competent attorneys with less than fifteen years of experience are $250 to $350 per hour." (collecting cases)). As Plaintiff has provided evidence in the form of a declaration demonstrating Ms. Ceizler's experience, (*see* Doc. 23, Ex. 1 ¶ 2), the undersigned finds that the requested rate of $225.00 is reasonable for Ms. Ceizler. Accordingly, the undersigned finds that the lodestar figure for Ms. Ceizler is $630 (2.8 hours x $225).

Plaintiff next requests an hourly rate of $193.04 for a paralegal, Leslie Zunker, (*see* Doc. 15, Ex. 4 ¶ 8), who has "over 20 years' experience," (Doc. 23, Ex. 2 ¶ 6). This requested hourly rate exceeds the reasonable range of rates for paralegal in the Fresno division, which is between $75 and $150. *See, e.g.*, *Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014). Given the paralegal's over two decades of experience, as supported by evidence in the form of a declaration, (*see* Doc. 23, Ex. 2 ¶ 6), the undersigned finds that a rate at the top of the permissible range—$150—is reasonable for Ms. Zunker. As such, the undersigned finds that the lodestar figure for the paralegal, Ms. Zunker, is $3,900 (26 hours x $150).

Finally, Plaintiff requests an hourly rate of $50 for a legal assistant, (*see* Doc. 15, Ex. 4 ¶ 8), who has worked for Plaintiff's counsel "for 4 years," (Doc. 23, Ex. 1 ¶ 6). This requested rate is less than the rates approved by courts in this division for similar legal support staff. *See, e.g.*, *Silvester*, 2014 WL 7239371, at *4 (providing a range of $75 to $150 for paralegals); *Franco*, 2012 WL 5941801, at *20 (approving a rate of "$100 per hour" for "legal assistants"). The undersigned therefore finds that the requested rate of $50 is reasonable for the legal assistant. Accordingly, the undersigned finds that the lodestar figure for the legal assistant is $155 (3.1 hours x $50).

In summary, the undersigned finds that the lodestar figures for Plaintiff's counsel and professionals are as follows: (1) Darin L. Brooks—$2,120.00; (2) John G. George, Jr.—$8,642.00; (3) Meagan W. Glover—$4,688.60; (4) Michael L. Lillibridge—$96.74; (5) Dawn Ceizler—$630; (6) Leslie Zunker—$3,900; and (7) a legal assistant—$155. The resulting total lodestar figure is $20,232.34.

The undersigned next addresses whether it is appropriate to adjust this lodestar figure. After determining the lodestar amount, "[t]he lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (citation omitted). These pertinent factors include "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* at 1095 (quoting *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623–24 (1976)). "In short, after determining the lodestar amount, the court shall then 'consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.'" *Ellis v. Toshiba Am. Info. Sys., Inc.*, 218 Cal. App. 4th 853, 881 (2013) (alteration in original) (quoting *EnPalm, LLC v. Teitler Family Tr.*, 162 Cal. App. 4th 770, 774 (2008)). "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *PLCM Grp.*, 22 Cal. 4th at 1095 (citation omitted). Finally, as "the relevant factors are considered only after the lodestar figure has been determined . . . . an upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998); *cf. Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 42 (2000) ("For example, certain factors California courts can use to enhance a lodestar award, such as the novelty and complexity of the issues, the special skill and experience of counsel, and the contingent nature of the recovery, cannot be used to increase an award in federal courts because they are presumed to be already incorporated into the lodestar figure." (citations omitted)).

Here, the undersigned finds that the total lodestar figure of $20,232.34 is appropriate given the relative simplicity of this case, Plaintiff's success in the litigation, and the action's early resolution on default judgment. Additionally, the undersigned is aware of no pertinent reasons to adjust this lodestar figure. The undersigned also finds persuasive the decisions of courts in the Fresno division of the Eastern District of California approving comparable total attorneys' fees amounts in similar cases—specifically, cases involving breach-of-contract claims that were resolved through default judgment. *See, e.g.*, *Leprino Foods Co. v. JND Thomas Co.*, Case No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *14 (E.D. Cal. Jan. 12, 2017) (recommending attorneys' fees in the amount of $21,400), *adopted in part by* 2017 WL 432480 (E.D. Cal. Feb. 1, 2017); *Bd. of Trs. of IBEW Local Union No. 100 Pension Tr. Fund v. Porges*, No. 1:11–cv–02048–LJO–SKO, 2013 WL 6596943, at *8 (E.D. Cal. Dec. 16, 2013) (approving total attorneys' fees in the amount of $22,196.70); *Global Ampersand, LLC v. Crown Eng'g & Constr., Inc.*, No. 1:07–CV–01692 OWN GSA, 261 F.R.D. 495, 502 (E.D. Cal. 2009) (approving attorneys' fees in the amount of $17,375.00). The undersigned therefore finds that it is inappropriate to deviate from the lodestar figure in this case. Accordingly, the undersigned recommends that the presiding district court judge approve the lodestar figure—$20,232.34—as Plaintiff's total recoverable attorneys' fees for this matter.

**B.     Costs**

Plaintiff also requests that the Court award costs. Unlike the issue of attorneys' fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)" as "a general proposition." *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g.*, *United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at *2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law . . . under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and California state law on the issue of attorneys' fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs." (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v.*

*Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at *8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action." (citing *DCI Sols. Inc. v. Urban Outfitters, Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at *2 (S.D. Cal. Apr. 23, 2012))). 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority."[7] *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). "Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Id.* "It comes as little surprise, therefore, that costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Id.* (citation omitted).

Plaintiff requests costs in the amount of (1) $342.94 associated with "service fees," and (2) $400 relating to filing fees.[8] (Doc. 15, Ex. 1 at 5; Doc. 23 at 2.) Plaintiff provided sufficient documentation in the form of invoices demonstrating that it incurred $323.30 in service fees and $400 in filing fees during the course of this action. (*See* Doc. 15, Ex. 2 at 6–8, 12; Doc. 23, Ex. 1 at 7–8; *id.*, Ex. 5 at 2.) These costs for service and filing fees are properly recoverable by Plaintiff. *See, e.g.*, *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–

---

[7] Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Rule 54 provides "a decided preference for the award of costs to the prevailing party." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2005–06 (2012) (citation omitted). Nonetheless, "the 'discretion granted by Rule 54(d) is not a power to evade' the specific categories of costs set forth by Congress." *Id.* (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 438 (1987)). Instead, Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id.* (citation omitted).

[8] In its briefing related to the Motion for Default Judgment, Plaintiff originally characterized its request for filing fees as a request for a "first appearance fee." (*See* Doc. 15, Ex. 1 at 5.) Following an inquiry from the Court, Plaintiff clarified that this request pertains to "the standard civil case filing fee," and not a "first appearance fee." (Doc. 23 at 2.)

SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshall under [Federal Rule of Civil Procedure] 4 may be recovered; private process servers' fees are properly taxed as costs." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990))). *See generally Alflex Corp.*, 914 F.2d at 178 ("In making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent to make service of process a taxable item. . . . Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1)."). The undersigned therefore recommends that Plaintiff be awarded $723.30 in total costs—$323.30 for "service fees" and $400 for filing fees.[9]

## VII. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that the presiding district court judge:

    (1)    GRANT IN PART Plaintiff's Motion for Default Judgment, (Doc. 15), insofar as Plaintiff request that the Court enter default judgment against Defendant California Pride, Inc.;

    (2)    Enter judgment against Defendant California Pride, Inc. in the amount of $187,469.39 plus prejudgment and post-judgment interest;

    (3)    Award attorneys' fees to Plaintiff in the amount of $20,232.34;

    (4)    Award costs to Plaintiff in the amount of $723.30.[10]

These findings and recommendations are submitted to the district judge assigned to this action pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these

---

[9] Plaintiff also requested an additional $19.64 associated with serving Defendants. (*See, e.g.*, Doc. 15, Ex. 1 at 5.) However, Plaintiff has failed to provide sufficient documentation supporting its request for costs as to this remaining amount of $19.64. Instead, Plaintiff submitted certified mail receipts, which list the recipients as individuals—Sandy and Dave Kilgore—who are not parties in this action. (*See* Doc. 15, Ex. 2 at 9–10.) The undersigned therefore recommends that the presiding district court judge find that this remaining $19.64 in requested costs is not recoverable.

[10] On June 13, 2017, Plaintiff filed a Brief Supplementing Record. (Doc. 23.) This brief related to Plaintiff's Motion for Default Judgment and is not a separate motion. (*See id.*) Nonetheless, Plaintiff designated this brief as a pending motion on the docket for this case. As this brief is not a pending motion, the undersigned DIRECTS the Clerk to remove the pending designation for Plaintiff's Brief Supplementing Record. (*Id.*)

findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**July 5, 2017**__                                   /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE